IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAMON PACHECO MORALES,

       Petitioner,

v.                                 CIV 05-704 JH/KBM

STANLEY J. MOYA, Warden, et al.,

       Respondents.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Ramon Morales' petition for a writ of habeas corpus under 28 U.S.C. § 2254, and Respondents' Answer and motion to dismiss. *See Docs. 1, 10, 12.* Unless otherwise noted, throughout this recommendation all citations to exhibits are those attached to Respondents' Answer. *See Doc. 12.*

Because Morales filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997). That is, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" Supreme Court precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also, e.g., Parker v. Scott,* 394 F.3d 1302, 1308-09 (10th Cir. 2005); *Saiz v. Ortiz,* 392 F.3d 1166, 1176 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2976 (2005); *Miller v. Mullin,* 354 F.3d 1288, 1292-93 (10th Cir. 2004), *cert. denied,* 543

U.S. 1154 (2005).

All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), Rules Governing Section 2254 Cases In The United States District Courts. I recommend that the petition be dismissed with prejudice.

## I.  Factual And Procedural Background

At all times during the protracted state trials, direct appeal, and the post-conviction proceedings, Petitioner was represented by various attorneys from office of the State Public Defender.  *See, e.g., Exhibits B, C, E, G, I, M, O, P, V, W, Y, FF.*

Petitioner was stepfather to a girl named Stephanie.  *See Exhibit C* at 2.  He was a habitual offender, having been convicted in Doña Ana County of at least three offenses:  auto burglary in August 1983; criminal sexual penetration and aggravated burglary in November 1985; and commercial burglary in November 1993.  *See Exhibit A* at 2-3; *Exhibit L* at 2-3.  Morales was incarcerated from August 1993 to January 1996 in association with the commercial burglary charge and conviction.  *See Exhibit G* at 2; *Exhibit M* at 4.  He was later incarcerated from October 6, 1996 to January 11, 1997 for something not mentioned in the record.  *See Exhibit G* at 2.

According to the State, evidently either the 1985 sexual penetration conviction, or some other unmentioned conviction for molestation, was a rape committed against a minor.  Also according to the State, at some point between 1992 and 1997, Petitioner was incarcerated on the

rape of a minor charge.[1]  The Public Defender submissions never challenged the State's assertion

that Morales had a prior child molestation conviction or that he served prison time for the charge

sometime between 1992 and 1997.  *See Exhibits P, FF.*

In February 1997, when she was fourteen years old, Stephanie accused Morales of sexual

abuse.  Except for one incident, she was consistently vague about the relevant time frame, and she

said that the abuse was conducted over a period of more than five years – from the time she was

eight years old in July 1992 to the time she was fourteen in February 1997.  *See Exhibit C* at 1-3,

5; *Exhibit E* at 1.  By my calculations, this is a span of some fifty-five months.  The original

indictment reflected this span, although the jury instructions during the first trial shortened the

time frame a bit to some fifty months.  *See Exhibit C* at 2-3, *Exhibit E* at 1-2.  Again by my

calculations, out of that fifty-month period, Morales was incarcerated for almost thirty-three

months.  *See, e.g., Exhibit E* at 3; *Exhibit G* at 2; *Exhibit M* at 3-4.[2]  In other words, he was in jail

well more than half of the time frame alleged by the Stephanie and the State.

Just before Morales' first trial, the New Mexico Court of Appeals had issued a decision of

first impression that was designed to balance the State's need to resort to charging lengthy

periods of child abuse because the victim cannot be precise, against the right of the accused to

sufficient notice of the charges such that a defense such as an alibi can be pursued.  *State v.*

---

[1]  *See Exhibit N* at 4 (if document were numbered) ("During part of the charging period [July 1992
to February 1997], the petitioner was in prison for a previous conviction for rape and child abuse."); *id.* at
8 ("previously convicted and imprisoned for rape and child abuse charges"); *Exhibit EE* at 2 (trial judge's
habeas findings that the nature of Petitioner's alibi was 'highly prejudicial').

[2]  The stipulated periods of incarceration were August 8, 1993 to January 28, 1996 and October 6,
1996 to January 11, 1997.  *See Exhibit G* at 2.  Per my calculations, these two periods span twenty-nine
months/twenty days, and three months/five days, respectively.

3

*Baldonado,* 124 N.M. 745, 955 P.2d 214 (N.M. Ct. App. 1998) (decided February 5, 1998).  The

two-year time frame over which the abuse allegedly occurred in *Baldonado* was described as the

State as "huge," and the length of the time frame caused "concern" to the Court of Appeals,

which stated a time frame of two years "surely is approaching the outer edges of constitutional

propriety." *Id.* at ___, 955 P.2d at 217, 219.  The *Baldonado* court nevertheless rejected a *per se*

rule and adopted a multi-factor balancing test to determine whether a lengthy charging period

violates due process.  The inquiry is two-pronged – if the prosecution could have provided more

specificity and a defendant was prejudiced by that failure, then the conviction cannot stand.  *See*

*id.* at ___, 955 P.2d at 219-22.

Stephanie proved to be a temperamental and inconsistent witness.  For example, Judge

Thomas Cornish presided over initial abuse and neglect proceedings.  In the presence of her

mother, Stephanie "testified calmly until she was asked questions concerning her mother."

*Exhibit C* at 2.  Judge Cornish thus recessed the proceedings to his chambers and questioned

Stephanie in the presence of her guardian ad litem.  When they returned to the courtroom, he

sealed the in-chambers portion of the tape, but "announced from the bench that the child had told

him in chambers that she had not been penetrated." *Id.*  Thereafter, Stephanie recanted her

allegations to her family several times. *Id.* at 8.

The criminal case against Morales resulted in two trials.  During the first trial, when

Stephanie testified at trial in the presence of her stepfather, she was "emotionally volatile."  That

is, she exhibited behavior ranging from distress, uncooperativeness, frank hostility, and angry

outbursts during direct examination, to relative docility and cooperation on cross-examination.

*Exhibit C* at 3; *see also Exhibit E* at 25.  The trial judge would later observe that Stephanie made

"covert glances at Defendant" during trial, and she was obviously traumatized by the experience. *Exhibit F* at 9-10. Indeed, after trial Stephanie would threaten suicide. According to defense counsel, however, she had been making such threats from the time she was removed from her home through her placement in foster care. *Exhibit C* at 4-5, *Exhibit E* at 3, 25.

A mistrial was declared when the jury was unable to reach a verdict on any of the counts. Therefore, before the second trial began, the prosecution moved to allow Stephanie to testify *via* videotaped deposition. Following a hearing, at which a doctor expert testified on behalf of the State, the motion was granted. *See, e.g., Exhibit C* at 3-5. The trial judge "could not conceive of putting [Stephanie] through more trauma" by requiring her to testify live at the second trial. *Exhibit E* at 5.

The deposition was taken at the Family Youth Incorporated offices, where Stephanie had previously attended group therapy. Stephanie, the judge, the prosecutors, defense counsel, and the court reporter were in the same room. Morales was in a separate room, where he could see and hear the deposition via a monitor. He was permitted to communicate with his attorneys during the deposition by notes ferried to them by a guard. Stephanie knew Morales was in the other room. *See Exhibit C* at 5-6; *Exhibit E* at 5-6.

During the deposition, the defense cross-examined Stephanie on her inconsistencies, vagueness, and the statement she made to Judge Cornish in chambers. Defendant's counsel contended that, by the end of the tape, Stephanie claimed she had been molested "40,000" times. *See Exhibit C* at 6-12. Over defense objections, the trial judge allowed the taped deposition to be played at the second trial, but he ordered redacted the portion of the tape that discussed Stephanie's statement to Judge Cornish and his comment that no penetration occurred. *Id.* at 11-

12. At trial, the prosecutors also called a doctor who examined Stephanie and found no physical evidence of abuse, but she also testified to Stephanie's statements alleging abuse.  The State also called the same doctor expert who testified at the motion hearing concerning the deposition, who gave her opinion why Stephanie showed little emotion in the videotaped deposition and why victims recant.  *See id.* at 12-13.

As with the first trial, the time periods charged by the State were an issue for the defense.  Evidently, sometime before the second trial proceedings were instituted, a grand jury issued an amended indictment that at first blush seemed to shorten the time frames a bit.  For example, one time frame was reduced to a specific date.  For some of the others, the commencement date was moved back by a couple of months.  But the net result was the same – Morales was still charged with abusing Stephanie from the time she was eight years old in July 1992 to the time she was fourteen in February 1997.  *See Exhibits A, L; see also Exhibit E* at 1.

Just prior to the second trial, the prosecutor apparently wanted to amend the indictment to allege even larger time frames based on the testimony from Stephanie's video deposition.  *See Exhibit E* at 2.  Defense counsel alluded to *Baldonado* when objecting to such an amendment.[3]  In fact, the State never did amend the indictment to either enlarge the time periods or to exclude the periods during which Morales was incarcerated.  Rather, trial testimony and both the indictment and the written jury instructions that would go into the jury room contained the fifty-five month time frame.  *See Exhibit E* at 2-3, 20; *Exhibit F* at 1-3; *Exhibit G* at 1-2.

---

[3]  As the New Mexico Court of Appeals quoted, at the hearing "defense counsel said that she had 'some due process problems' and that 'we've had a case saying that a two-year charging period on these kiddie-sex-offense cases is approaching due process limits in terms of vagueness of the indictment.'" *Exhibit H* at 2.

The defense, of course, did not want to bring up the subject of Defendant's incarceration in its case-in-chief.  *See Exhibit E* at 3.  Only at the very end of trial, after the jurors had been read the written instructions and just prior to closing argument, did the State agree to the defense's proposed stipulation.  The stipulation read to the jury provided that the defendant was "not in the home" during certain specific dates, which amounted to some thirty-three months.  *See supra,* note 2; *Exhibit E* at 3; *Exhibit F* at 2; *Exhibit G* at 2.  In its closing, the prosecution explained that it did not contend that Morales committed the molestation while he was absent from the home, and explained that the State could not have been more precise with the charging time frames.  *Exhibit F* at 2.  In its closing arguments, the defense emphasized that Morales was out of the home for more than half of the time during which Stephanie testified she was abused, and that Morales was not at home during specific incidents to which Stephanie testified.  *See Exhibit E* at 3; *Exhibit F* at 2-3; *Exhibit G* at 2.

The second jury convicted Morales of all counts.  *Exhibit C* at 13.  On direct appeal Morales was only successful in having his sentence recalculated with regard habitual offender enhancements.  This reduced his total sentence from 140 ½ to 112 ½ years of incarceration.  In all other respects, his direct appeal and habeas proceedings were unavailing.  *See, e.g., Exhibits A, H, J, L, O, EE, GG.*  This timely § 2254 petition followed.  *See Docs. 1, 10.*

## II.  Analysis

Morales raises three claims, all of which were briefed in the state proceedings.  He phrases the claims somewhat differently and more generally than did his attorneys on direct appeal, but I do not find the variance significant enough to raise a concern about exhaustion.  Even if the "*pro-se*-worded" claims should be considered unexhausted, they nonetheless warrant dismissal on the

merits.  *See* 28 U.S.C. § 2254(b)(2).  The three claims Morales raises, which I address in this

order, are:

> (1)   use of Stephanie's videotaped deposition violated his right to confrontation;

> (2)   the redacted videotape testimony that showed Stephanie denied
>        penetration to Judge Cornish resulted in her videotape testimony being
>        "perjured;" and

> (3)   trial counsel was ineffective in failing to successfully raise a *Baldonado*
>        objection at the trial level or properly preserve the issue for appeal,
>        thereby resulting in prejudice because a successful *Baldonado* argument
>        would have resulted in a change to the indictment and the jury
>        instructions at the second trial.

*See Doc. 1* at 6, 7, 9.

### A.  Videotape Claims

*1.  Use Of Tape In Lieu Of Live Testimony*

The mere use of a videotaped deposition in a criminal proceeding, does not, as Petitioner's

claim suggests, violate the Confrontation Clause.  The Supreme Court has "never held . . . that the

Confrontation Clause guarantees criminal defendants the ***absolute*** right to a face-to-face meeting

with witnesses against them at trial."  *Maryland v. Craig,* 497 U.S. 836, 844  (1990) (emphasis

original).  Instead, "a defendant's right to confront accusatory witnesses may be satisfied absent a

physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to

further an important policy and only where the reliability of the testimony is otherwise assured."

*Id.* at 850.  In the case of special procedures employed for child sexual abuse victim witnesses, to

pass constitutional muster, the *Craig* decision instructs:

> if the State makes an adequate showing of necessity, the state interest in
> protecting child witnesses from the trauma of testifying in a child abuse
> case is sufficiently important to justify the use of a special procedure that

permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

The requisite finding of necessity must of course be a case-specific one:  The trial court must hear evidence and determine whether use of the [special] procedure is necessary to protect the welfare of the particular child witness who seeks to testify. . . .  The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. . . .  Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma.  In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present.  Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimus, i.e.,* more than "mere nervousness or excitement or some reluctance to testify," . . . .  We need not decide the minimum showing of emotional trauma required for use of the special procedure, however, because the Maryland statute, which requires a determination that the child witness will suffer "serious emotional distress such that the child cannot reasonably communicate," § 9-102(a)(1)(ii), clearly suffices to meet constitutional standards.

\* \* \* \* \*

In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation. Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.

*Id.* at 855-57.

The Tenth Circuit has interpreted the *Craig* decision as requiring the trial court to "hear expert testimony regarding the particular child" on whether the presence of the defendant would traumatize the child in more than a *de minimus* way. *Thomas v. Gunter,* 962 F.2d 1477, 1481 (10th Cir. 1992) (emphasis added). Though there are few decisions on the issue, New Mexico's procedures for taking and using child victim depositions have been upheld under the *Craig* standards by the New Mexico Supreme Court, this Court, and the Tenth Circuit in pre-AEDPA decisions. *See State v. Fairweather,* 116 N.M. 456, 461-63, 863 P.2d 1077, 1082-1084 (N.M. 1993) (and state cases cited therein); *Larson v. Dorsey,* 1993 WL 76278 (10th Cir.) (affirming decision from this Court denying habeas relief on *Craig* issue), *cert. denied,* 510 U.S. 843 (1993).

Here, defense counsel challenged the use of the videotape deposition instead of live testimony as a federal Sixth Amendment confrontation claim. The defense argued that the doctor who testified had no personal knowledge of Stephanie's state of mind and that her testimony as to fear of rejection by her family is an insufficient showing under *Craig*. *See Exhibit E* at 25-26. The Court of Appeals rejected the argument, stating in full:

> Defendant argues that the videotape was an unfair and unreasonable substitution [pp 6] for the complaint's live testimony at trial. We disagree.
>
> Under rule 5-504 NMRA 2000 and NMSA 1978, § 30-9-17 (1978), a trial court has the discretion to order a videotaped deposition of a child complainant, upon a showing that "the child may be unable to testify without suffering unreasonable and unnecessary mental or emotional harm." Rule 5-504(A). The law requires that the court make a specific finding that the potential harm to the child, if forced to testify at trial, outweighs the defendant's Sixth Amendment right to confront an accuser. See State v. Fairweather, 116 N.M. 456, 463, 863 P.2d 1077, 1084 (1993); State v. Tafoya, 108 N.M. 1, 4, 765 P.2d 1183, 1186 (Ct.

App.) [, *cert. denied,* 107 N.M. 785 , 765 P.2d 758 (N.M. 1988)].

Defendant argues that the trial judge erred in ordering the videotaped deposition for two reasons:  (1) the expert who testified at the hearing lacked personal knowledge of the complainant's state of mind before or afer the first trial and (2) the complainant feared not only Defendant but also feared rejection by her entire family if she testified at trial.  Although the complainant's behavior during and after the first trial was certainly relevant to the decision of whether to videotape her testimony in the second trial, it was not the only factor to be considered.  The expert witness testified that she was currently aware of the complainant's state of mind, and that the complainant had expressed fear that if asked to testify at trial she would be unable to do so.  The expert also testified that, in her opinion, the complainant would face unreasonable and unnecessary harm if forced to testify at trial in the presence of Defendant.  Furthermore, we noted that the judge at the second trial was present at the first trial and had an opportunity to view the complainant's behavior at the earlier trial.  The judge recalled the need to order at least two recesses during the first trial because the complainant was unable to continue testifying.

We likewise reject Defendant's contention that the complainant's fear of rejection by her family was insufficient to justify the videotape.  The expert testified that the complainant feared Defendant, and that her feelings toward Defendant were inextricably linked to her family.  We will not penalize the complainant because she is the victim of a dysfunctional family.

Given the evidence of the complainant's extreme difficulties both during and after testifying at the previous trial, coupled with the expert testimony proffered at the motion hearing, we conclude that the trial court did not abuse its discretion in ordering a videotaped deposition of the complainant.

*Exhibit H* at 6-7.

The Supreme Court in *Craig* announced principles for analysis of the issue, but remanded the case for their application.  *See Craig*, 457 U.S. at 860 ("we cannot be certain whether the Court of Appeals would reach the same conclusion in light of the legal standard we establish today").  It appears that the Supreme Court has not since addressed the issue.  Here, although the

11

state court did not cite the *Craig* standards, it cited state decisions that have applied *Craig*. Thus, the New Mexico Court of Appeals' decision is not "contrary to" clearly established Supreme Court precedent as that phrase has been interpreted. *E.g., Brown v. Payton,* ___ U.S. ___, 125 S. Ct. 1432, 1438 (2005); *Early v. Packer,* 537 U.S. 3, 8 (2002); *Gipson v. Jordan,* 376 F.3d 1193, 1196-97 & n.1 (10ᵗʰ Cir. 2004), *cert. denied,* 126 S. Ct. 729 (2005); *Saiz,* 392 F.3d at 1176.

In addition, Petitioner makes no assertion, much less a "clear and convincing" showing, that the state court's historical recitation on the content of the expert's testimony and the findings of the trial judge were an "unreasonable determination." *See, e.g., Miller-El v. Dretke,* ___ U.S. ___, 125 S. Ct. 2317, 2325 (2005); *Toles v. Gibson,* 269 F.3d 1167, 1182 (10ᵗʰ Cir. 2001), *cert. denied,* 538 U.S. 948 (2003); 28 U.S.C. § 2254(e)(1); *see also e.g., Thomas,* 962 F.2d at 1481 (unavailability findings under *Craig* are mixed question of law and fact); *Larson,* 1993 WL at *2 (presumption of correctness applies to *Craig* findings by state court).

Finally, I do not believe that this state decision applied the *Craig* principles in Morales' case in an objectively unreasonable manner. *E.g., Brown,* ___ U.S. at ___, 125 S. Ct. at 1439; *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003). Based on expert and first-hand observation, the state court found that Stephanie was extremely traumatized and would be again be traumatized if called to testify in the presence of her stepfather at the second trial. Accordingly, I find this claim without merit.

## 2.  *Redacting The Tape*

When Stephanie's video deposition was conducted, defense counsel had not yet been allowed to hear the portion of her testimony in chambers with Judge Cornish. At that time, because of Judge Cornish's statement on the record, counsel believed Stephanie told him that

she had not been penetrated.  At the video deposition, defense counsel questioned her about what

she told Judge Cornish, and she said she could not remember.  *See Exhibit C* at 9-10.  She also

either claimed Judge Cornish did not say what he said in open court, *see Exhibit C* at 10, or could

not remember what he said, *see Exhibit E* at 10.  Defense counsel sought and was denied access

to the sealed tape to use for impeachment purposes at trial, and the portion of the videotape

where defense counsel sought to explore what Stephanie told Judge Cornish was redacted before

it was played for the jurors.  *See Exhibit C* at 10-11; Exhibit E at 10-16.

As it turned out, defense counsel learned of the contents of the sealed tape during the

direct appeal, and the relevant portion of the sealed tape provided:

| | |
|---|---|
| Judge Cornish: | . . . we're talking about a penis . . .  Did he ever put it in to you? |
| Stephanie: | ***Not really.*** |
| Judge Cornish: | He's tried? (No answer). |
| Guardian ad litem: | What happens when he tries? |
| Stephanie: | It hurts me. |
| Guardian ad litem: | Has he every tried to put it in your privates: |
| Stephanie: | Yes. |
| Guardian ad litem: | Has he ever tried to put it in your mouth? |
| Stephanie: | Yes. |

*Exhibit E* at 17 (emphasis added); *see also id.* at 8-10, 16.

Petitioner claims that redacting the portion of the videotape that covered her sealed

statement to Judge Cornish made Stephanie's testimony "perjurous," evidently because on the

videotaped deposition she testified that she had been penetrated vaginally and bled.  *See Exhibit E*

at 21.  Counsel raised the claim as a denial of federal rights to due process, confrontation, and

effective cross-examination, arguing that it was unable to effectively impeach Stephanie with her

prior inconsistent statement that she had "not really" been penetrated.  *See Exhibit E* at 21-24.

The New Mexico Court of Appeals rejected the claim as a matter of state evidentiary rules

on prior inconsistent statements, and because the redaction did not result in any harm.  It reasoned as follows:

> Defendant alleges that the trial court violated his rights to confrontation and cross-examination by refusing to allow Defendant to impeach the complainant with testimony from a sealed tape of the abuse and neglect hearing.  We disagree that the statement was inconsistent with the complainant's trial testimony and hold that exclusion of the statement was proper.

> To be admissible as a prior inconsistent statement under Rule 11-613(B) NMRA 2000, a prior statement must differ substantively from the testimony given at trial.  See Varela, 1999-NMSC-04, ¶ 36.  In this case, the prior statement was not a clear denial of the allegations nor was it obviously inconsistent with the complainant's trial testimony.  When asked by Judge Cornish at the abuse hearing whether she had been penetrated by Defendant, the complainant answered, "Not really."  This testimony in itself is ambiguous:  it is unclear whether the complainant was denying penetration or was commenting on the degree of penetration.  The latter interpretation appears more likely, however, when read in context with the complainant's later statements that it hurt when Defendant tired to penetrate her.  This testimony is consistent with the testimony given by the complainant at trial.  We conclude that the prior testimony was not substantively inconsistent with the complainant's testimony at trial, and therefore was properly excluded.

> Furthermore, we agree with the State that any error in excluding the prior statements was harmless beyond a reasonable doubt.  See State v. Woodward, 121 N.M. 1, 9, 908 P.2d 231, 239 (1995) (holding that where defendant has invoked his right to cross-examine the complainant under the confrontation clause, court must apply constitutional standard of harmless beyond a reasonable doubt).  The statements made at the earlier hearing were more inculpatory than exculpatory of Defendant and they were cumulative of other testimony given by complainant at trial.  Furthermore, the "not really" answer was ambiguous and not a denial of the complainant's allegations of sexual abuse.  We hold that exclusion of the testimony was harmless beyond a reasonable doubt.

> In reaching our conclusions, we recognize that Defendant did not

14

have an opportunity to review the tape at trial and so was not aware of the exact statements made by complainant at the abuse and neglect hearing. However, because we are not faced with a case in which a witness had made a prior statement unequivocally denying an allegation of abuse, it is unnecessary for us to reach the issue of whether the trial court should or could have ordered the tape to be unsealed.

*Exhibit H* at 4-5.

Errors of state law, such as evidentiary rulings, are not grounds for habeas relief. *E.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The mere fact that evidence a defendant wanted to present is excluded at trial does not automatically establish a denial of the "fair opportunity to defend himself." *United States v. Scheffer,* 523 U.S. 303, 316 (1998) (portion of opinion in which eight Justices joined). The mere fact that the questions defense counsel wanted to pursue with Stephanie were relevant for impeachment also is not dispositive. *E.g., United States v. Montelongo,* 420 F.3d 1169, 1173-74 (10th Cir. 2005). A defendant's desire to introduce certain evidence must sometimes yield to other legitimate interests, such as a state rape shield law. *E.g., Richmond v. Embry,* 122 F.3d 866, 872 (10th Cir. 1997).

Though the Court of Appeals not specifically cite *Chapman v. California,* it relied on a state decision that does. *See State v. Woodward,* 121 N.M. 1, ___, 908 F.2d 231, 239-40 (1995) (citing *Chapman v. California,* 386 U.S. 18, 24 (1967) (standard of harmlessness beyond a reasonable doubt for Confrontation Clause errors). The application of the *Chapman* standard for harmless error to a claimed Confrontation Clause violation is correct. *See, e.g., Lilly v. Virginia,* 527 U.S. 116, 139-40 (1999). The Court of Appeals ultimately found that redacting the evidence was harmless beyond a reasonable doubt under the *Chapman* standard because, in the proper context, Stephanie's sealed statement about penetration was inculpatory and ambiguous.

It turns out the state court's *Chapman* finding is dispositive of the constitutional violations

alleged as well.  Whether viewed as a claim under the Sixth Amendment Confrontation Clause, the Sixth Amendment right to cross-examination, or the Fourteenth Amendment right to due process, the ultimate consideration is whether exclusion of the challenged portion of the tape, viewed in light of the proceedings as a whole, "rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  *Parker v. Scott,* 394 F.3d 1302, 1317 (10th Cir. 2005) (internal quotations and citations omitted) (and Supreme Court authority cited therein); *see also e.g., Ellis v. Mullin,* 326 F.3d. 1122, 1128 (10th Cir. 2002) (and Supreme Court authority cited therein), *cert. denied,* 540 U.S. 977 (2003); *Richmond v. Embry,* 122 F.3d 866, 870-72 (10th Cir. 1997) (same), *cert. denied,* 522 U.S. 1122 (1998); *Clardy v. McKune,* 89 Fed. Appx. 665, 674 n. 8 (10th Cir. 2004) (noting Sixth and Fourteenth amendment analysis the same).

For all of these challenges, the dispositive inquiry focuses on whether the omitted evidence was critical exculpatory evidence that would have introduced reasonable doubt into the trial that otherwise was not present and therefore might have changed the outcome of the trial.  *See Parker,* 394 F.3d at 1317-18; *Ellis,* 326 F.3d at 1128-30; *Richmond,* 122 F.3d at 872, 874-76. No Supreme Court authority holds otherwise in any decision, much less a case involving allegedly prior inconsistent statements of child abuse complainants.  Thus, I cannot conclude that the New Mexico Court of Appeals analyzed the claim contrary to clearly established Supreme Court precedent as that phrase has been interpreted.  *E.g., Brown,* 125 S. Ct. at 1438 (2005).

Nor do I find that the state court's "harmlessness" decision objectively unreasonable. *E.g., Brown,* ___ U.S. at ___, 125 S. Ct. at 1439.  Since Stephanie was the only prosecution witness to the events, the defense wanted to impeach her credibility.  Other portions of the videotaped testimony demonstrate that it was given ample opportunity to do so.  Among the other

16

things revealed by the video deposition, Stephanie testified to offenses occurring during times

when Morales was clearly in jail; she recanted her allegations several times; she admitted she lied

in her testimony in the previous trial; and she concluded that Morales had molested her "40,000""

times.  *Exhibit C* at 8-9, 12.  Accordingly, I also find this claim without merit.

### B.  *IAOC/Baldonado Claim*

As mentioned above, the *Baldonado* decision adopted a multi-factor balancing test to

determine whether a lengthy charging period violates due process.  Here, the Court of Appeals

found that defense counsel waived the *Baldonado* issue on direct appeal, *Exhibit H* at 2-3, but

also that Morales suffered no prejudice because he "ultimately received the stipulation he sought

and has offered no evidence that he was prejudiced by the charging period," *id.* at 4.

In the state habeas petition, habeas counsel argued that:  trial counsel was ineffective

under the state and federal constitutions under the *Strickland* standard by failing to raise and

preserve the *Baldonado* argument; Morales  was prejudiced because failure to restrict the time

frames compromised his alibi defense at trial and because no state court evaluated his case under

the *Baldonado* factors; and had the time frames been shortened, the second jury would have

deadlocked as well.  *See Exhibit M* at 2, 6-8.  The State responded with its belief that trial counsel

did not pursue the *Baldonado* issue as a matter of trial strategy, because doing so would

somehow have revealed the fact of his incarceration for rape of a minor to the jury.  *Exhibit N* at

4 (if it were numbered).

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984), governs

ineffectiveness claims and is "clearly established" federal law for AEDPA purposes.  *See, e.g.,*

*Wiggins v. Smith*, 539 U.S. 510,  521, 534 (2003).  An ineffective assistance of counsel claim fails

if either of the *Strickland* prongs are not met.  It is entirely appropriate for a habeas court to

analyze the prejudice prong first and exclusively, if that is the easier course.  *E.g., Romano v.*

*Gibson,* 239 F.3d 1156, 1181 (10th Cir.), *cert. denied,* 534 U.S. 1045 (2001).

Although the trial court did not specifically cite *Strickland,* it relied on a state decision that

does, and clearly the trial judge considered both of the *Strickland* prongs in making his ruling.

*See State v. Trujillo,* 131 N.M. 709, 723, 42 P.3d 814, 828 (2002).  After holding the evidentiary

hearing that the New Mexico Supreme Court required, the trial judge rejected the claim on both

prongs stating:

> 5.  The State and the defense counsel entered into a stipulation that was read out to the jury. . . .  The stipulation recited the dates during which the defendant neither lived in nor visited the victim's home.  No mention was made of the defendant's incarceration.

> 6.  Defense counsel thereby gained the advantage of presenting the alibi in a very solid form without being required to reveal the highly prejudicial nature of that alibi.  What is more, in closing argument, defense counsel used the stipulation to throw doubt on the whole of the child's testimony.  The Court cannot say that counsel's trial strategy was irrational.  Trujillo, 42 P.3d 814.

> 7.  There is no reason to believe that the result of the trial would have been different had defense counsel moved to narrow the time frame of the alleged criminal conduct rather than rely on the stipulation.  The defendant fails to demonstrate that the narrowed time frame of twenty-two (22) months would have been itself unreasonable.  The defendant would not have received any better notice of the charges against him from such an amended indictment than he actually had from the indictment as is stood and his own knowledge.  No prejudice having been shown, the conviction should stand.  State v. Baldonado, 1998-NMCA-040, 955 P.2d 214.  See also Trujillo.

*Exhibit EE* at 1-2.

Having applied the *Strickland* standards and there being no Supreme Court decision construing an ineffectiveness claim in a sufficiently similar context, I cannot conclude that the trial analyzed the claim contrary to clearly established Supreme Court precedent as that phrase has been interpreted. *E.g., Brown,* 125 S. Ct. at 1438 (2005). I also find that the state decision was not objectively unreasonable on either prong. *E.g., Brown,* ___ U.S. at ___, 125 S. Ct. at 1439.

It is plausible counsel avoided a *Baldonado* argument at trial to avoid revealing the nature of his absences, the position taken by the State that the trial judge seemingly adopted. In my view, counsel more likely raised the *Baldonado* argument the way she did so as to try and preserve the argument for an appeal should that be necessary. She plainly alerted the court to the *Baldonado* case but just not by name. *See supra* note 5. Nothing in *Baldonado* indicates that in narrowing the time frames the jury has to be told why it was narrowed – to the contrary, *Baldonado* contemplates a correction by reindictment before trial. On the other hand, succeeding on a *Baldonado* claim **on appeal** would, by the terms of the opinion, result in a conviction that is reversed and dismissal of the charges. *See* 124 N.M. at ___, 955 P.2d at 222. Morales had a solid *Baldonado* issue. The two-year time period in *Baldonado* that concerned the Court of Appeals as "approaching the outer edges of constitutional propriety," *id.* at ___, 955 P.2d at 217, 219, was almost three years shorter than the period for which Morales was indicted.

Regardless of which strategy trial counsel employed, because there is nothing in the record to overcome the presumption that counsel's handling of the *Baldonado* argument "might be considered sound trial strategy," *Strickland,* 466 at 659, I cannot conclude independently that counsel's conduct was "completely unreasonable," *Bullock v. Carver,* 297 F.3d 1036, 1046-50 (10th Cir.), *cert. denied*, 573 U.S. 1093 (2002), or that the state court decision is objectively

unreasonable on the first prong.

Nor does the record support a finding of prejudice either on the underlying *Baldonado* claim or under *Strickland's* second prong.  The stipulation that Morales was absent for more than half of the period Stephanie claimed she had been molested, Morales was permitted at trial to raise his partial alibi defense, without any revelation that he was absent because he was incarcerated.  He also kept a *Baldonado* argument on the table for appeal.  Furthermore, a finding a prejudice is required both in the *Baldonado* balancing and the *Strickland* inquiries.  Although the Court of Appeals chose to characterize counsel's conduct as a waiver, as did the trial court in the post-conviction proceeding, both decisions found Morales suffered no prejudice because he achieved the *Baldonado*-type narrowing with the stipulation.  Even though the Court of Appeals found waiver, it actually did address the issue that would have been dispositive of a *Baldonado* claim.  The trial court did the same thing in post-conviction proceedings in deciding that the merits of the *Baldonado* issue and *Strickland* claim failed on the prejudice prong.  Accordingly, I find the ineffectiveness claim should be dismissed as without merit.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Respondents' motion *(Doc. 10)* be granted, and Morales' § 2254 petition be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day**

period  if that party wants to have appellate review of the proposed findings and

recommended disposition.  If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE